UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

RAMONA J. ROSARIO, as administrator of the estate of Haniel Reyes-Rosario, and RAMONA J. ROSARIO, individually,

       Plaintiff,

-against-

TOWN OF MOUNT KISCO, VILLAGE OF MOUNT KISCO, FRANCESCA LUPPINO, FRANCESCA LUPPINO 2013 REVOCABLE LIVING TRUST, ANTONIO LUPPINO, and SHARON DASILVA,

       Defendants.

No. 16-cv-8766 (NSR)

OPINION & ORDER

---

NELSON S. ROMÁN, United States District Judge:

  Plaintiff Ramona J. Rosario ("Plaintiff") commenced this action individually and as administrator of the estate of Haniel Reyes-Rosario against the Town and Village of Mount Kisco ("Mt. Kisco"), Francesca Luppino, Francesca Luppino 2013 Revocable Living Trust (the "Trust"), Antonio Luppino ("Mr. Luppino"), and Sharon DaSilva (collectively "Defendants"), asserting a federal claim, pursuant to 42 U.S.C. § 1983 ("Section 1983"), under the Fourteenth Amendment to the United States Constitution, as well as several state law claims. (Second Am. Compl. ("SAC"), ECF No. 78.)

  Presently before the Court are Mt. Kisco and Mr. Luppino's motions to dismiss the Second Amended Complaint ("SAC"). (ECF Nos. 100, 104.) For the following reasons, Mt. Kisco's motion to dismiss the federal law claims against it is GRANTED, and Plaintiff's remaining state law claims are DISMISSED as a matter of discretion.



# BACKGROUND

## I. Factual Background

The Court presumes the parties' familiarity with the facts of this case, which are detailed in the Court's May 11, 2018 Opinion & Order. *See Rosario v. Town of Mount Kisco*, No. 16-CV-8766 (NSR), 2018 WL 2209487 (S.D.N.Y. May 11, 2018) (ECF No. 63) (the "2018 Opinion").

In essence, this case arises from a tragic incident concerning a Hispanic[1] immigrant, Haniel Reyes-Rosario ("Haniel"), who was killed on January 20, 2016 by a fire that engulfed the basement apartment in which he resided. (SAC ¶¶ 17-21, 25-33.) As is relevant to the present motions, Plaintiff alleges that Haniel's death was caused by Mt. Kisco's policy of not enforcing applicable housing regulations at buildings it knew were occupied by Hispanic immigrants. (*Id.* ¶¶ 187-219.) Plaintiff further avers that Haniel's death was a result of the negligence and nonfeasance of Mr. Luppino, who, Plaintiff contends, was responsible for handling all maintenance issues, conducting all repairs, and ensuring safety and regulatory compliance. (*Id.* ¶¶ 260-305.)

## II. Procedural Background

### A. Complaint, FAC, and the First Motion to Dismiss

Plaintiff commenced this action on November 11, 2016 (ECF No. 1), and later amended her complaint on February 13, 2017 (the "FAC"). (ECF No. 42.) Thereafter, the Court granted Defendants Mt. Kisco and Mr. Luppino leave to file pre-answer motions to dismiss, which were, in turn, filed on June 1, 2017. (ECF Nos. 50 & 55.)

### B. The 2018 Opinion and Order

On May 11, 2018, the Court issued its Opinion & Order, which granted the respective motions to dismiss. 2018 Opinion, 2018 WL 2209487 at *12.

---

[1] As it did in the 2018 Opinion, this Court adopts the SAC's nomenclature, which refers to Plaintiff and people of Latin American ancestry as "Hispanic."

2

The Court began with Plaintiff's federal claims against Mt. Kisco. *Id.* at *5. As an initial matter, the Court analyzed whether Plaintiff had sufficiently pleaded enough facts to establish liability under *Monell v. Dep't of Soc. Servs. of the City of N.Y.*, 436 U.S. (1978). To that end, it determined that, although Plaintiff had alleged sufficient facts to support the plausibility of an existing municipal policy or custom, Plaintiff had failed to establish a direct causal link between the alleged municipal policy and the purported constitutional harm. *Id.* at *6.

The Court next turned to the substance of Plaintiff's federal claims, *i.e.*, whether Plaintiff had sufficiently alleged constitutional harms under the Equal Protection Clause. *Id.* at *6-8. Initially, the Court construed Plaintiff's complaint as raising two types of Equal Protection claims—selective enforcement and intentional discrimination. *Id.* *6-7. It then analyzed each basis. As to Plaintiff's selective enforcement claim, the Court concluded that Plaintiff failed to establish a similarly situated comparator, which is a necessary component of any selective enforcement claim. Specifically, the Court determined that Plaintiff's generalized description of potential comparators as "non-immigrant tenants" was insufficient for the Court to determine if a jury could plausibly decide that the unidentified comparators were similar situated to Haniel. *Id.* at *7. Turning to the intentional discrimination claim, the Court determined that Plaintiff had failed to provide factual allegations supporting the plausibility of either discriminatory intent or disparate impact related to the application of Mt. Kisco's facially neutral housing regulations. *Id.* at *9. The Court explained that "[t]here certainly could be a situation where factual allegations of disparate impact on the Hispanic immigrant population, coupled with Plaintiff's further factual allegations of racial animus, could plausibly establish discriminatory intent." *Id.* However, because of the absence of any such allegations, Plaintiff's claims failed. *Id.*

The Court next addressed the state law claims alleged against Mt. Kisco and Mr. Luppino, respectively. *Id.* at *9-12. The Court first dismissed the state law claims against Mt. Kisco,

explaining that Plaintiff had failed to allege that a special relationship existed between Mt. Kisco and Plaintiff. *Id.* at *10. Specifically, the Court determined that (1) the applicable housing regulations did not create a private right of action for Plaintiff, (2) there was no indication that Plaintiff or Haniel had any contact with an agent of Mt. Kisco, and (3) there was no assumption by Mt. Kisco of an affirmative duty to act on behalf of Haniel or Plaintiff. *Id.*

The Court then dismissed the state law claims against Mr. Luppino. *Id.* at *11. Specifically, the Court determined that Plaintiff only alleged facts establishing nonfeasance, which required that Mr. Luppino have "complete and exclusive control" of the Property in order to be liable for any harms sustained by Plaintiff and/or Haniel. *Id.* Under that framing, the Court concluded that Plaintiff had not sufficiently alleged that Mr. Luppino was in exclusive control of the Property, namely because the FAC merely averred that Mr. Luppino "assumed multiple responsibilities and took on varying obligations." *Id.*

Upon dismissing the claims against Mt. Kisco and Mr. Luppino, the Court granted Plaintiff leave to amend the municipal liability, selective enforcement, and intentional discrimination claims against Mt. Kisco, as well as the state-law claims against Mr. Luppino. *Id.* at *12. The Court did not, however, grant Plaintiff leave to amend the state law claims against Mt. Kisco. *Id.* The Court further noted that, to extent Plaintiff failed to timely file a Second Amended Complaint, such failure would result in "dismissal of all federal claims, all claims against Mr. Luppino, and remand to State Court." *Id.*

**C. The Second Amended Complaint**

On July 30, 2018, Plaintiff filed the SAC. In addition to pleading an additional claim for civil conspiracy against Defendants Mt. Kisco, Francesca Luppino, the Trust, and Mr. Luppino (SAC ¶¶ 331-42), the SAC also included additional details to support Plaintiff's claims. For example, regarding the federal claims against Mt. Kisco, the SAC provides new details about (1) Mt. Kisco's

4

alleged historical animosity toward Hispanic immigrants (*id.* ¶¶ 40-43, 68-69, 78-80); (2) the continued disparity in housing conditions between immigrants and non-immigrants (*id.* ¶¶ 81-86, 90-93); (3) Mt. Kisco's awareness and disregard of the alleged housing regulation violations specifically at the Property (*id.* ¶¶ 114-128, 137-53); and (4) a disparity in Mt. Kisco's enforcement of code violations between 2007-2016 and 2017 (*id.* ¶¶ 159-85).

As to the state law claims against Mr. Luppino, the SAC has now revised its allegations to state that Mr. Luppino and Francesca Luppino "jointly[] had comprehensive and exclusive responsibility for the management and day-to-day operations of the Property." (*Id.* ¶ 263.) The SAC clarified, however, that Francesca Luppino had "comprehensive and exclusive responsibility for business matters, including, but not limited to, collecting rent and approving renters," while Mr. Luppino "had comprehensive and exclusive control of all physical aspects of the Property and [related] costs," which included "handling all maintenance issues, conducting all repairs and ensuring safety and regulatory compliance." (*Id.* ¶¶ 264-66.)

## LEGAL STANDARD

The relevant inquiry under Rule 12(b)(6) is whether the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* at 679. To survive a motion to dismiss, a complaint must supply "factual allegations sufficient 'to raise a right to relief above the speculative level.'" *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (quoting *Twombly*, 550 U.S. at 555). The Court must take all material factual allegations as true and draw reasonable inferences in the non-moving party's favor, but the Court is "'not bound to accept as true a legal conclusion couched as a factual

5

allegation,'" or to credit "mere conclusory statements" or "[t]hreadbare recitals of the elements of a cause of action." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

To determine whether a complaint states a plausible claim for relief, a district court must consider the context and "draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. A claim is facially plausible when the factual content pleaded allows a court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678.

## DISCUSSION[2]

### I. Defendant Mount Kisco's Motion to Dismiss

Mt. Kisco advances two primary arguments in support of dismissal of Plaintiff's federal claims. *First*, Mt. Kisco argues that Plaintiff has again failed to properly allege the existence of a municipal custom or policy or that any such custom or policy caused the alleged harms. (Mt. Kisco Mem. of Law in Support of Mot. to Dismiss ("Mt. Kisco Mot."), ECF No. 101, at 6-9.) *Second*, Mt. Kisco contends that Plaintiff has again failed to allege enough facts to establish (1) a similarly situated comparator for purposes of her selective enforcement claim, and (2) that any failure to enforce Mt. Kisco's housing regulations was a result of discriminatory animus. (*Id.* at 9-15.) The Court addresses these contentions below.

---

[2] Both Plaintiff and Defendants submit various materials and affidavits in support of their respective positions. As an initial matter, the Court notes that it may only consider a narrow universe of materials on a motion to dismiss, to wit, the factual allegations of the complaint, the documents attached as exhibits or incorporated by reference, matters of which judicial notice may be taken, and documents that are integral to Plaintiff's complaint. *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47-48 (2d Cir. 1991). The Court, however, cannot "consider factual averments contained in affidavits on a Rule 12(b)(6) motion." *Amadei v. Nielsen*, 348 F. Supp. 3d 145, 155 (E.D.N.Y. 2018) (quoting *Fonte v. Bd. of Managers of Cont'l Towers Condo.*, 848 F.2d 24, 25 (2d Cir. 1988)); *see also Cortec*, 949 F.2d at 47 (The problem arises when a party seeks to introduce affidavits, depositions or other extraneous documents not set forth in the complaint for the court to consider on a Rule 12(b)(6) motion. We suggested nearly 50 years ago that such motions be treated as motions for summary judgment and disposed of as such."). The Court's analysis thus is inherently confined to these narrow circumstances, and, to the extent, the parties have offered affidavits of facts or documentary materials that are outside of the universe of materials the Court may consider, the Court will disregard those materials. In any event, the Court notes that its decision would not be impacted by the materials submitted by the parties.

### A. Sufficiency of Plaintiff's *Monell* Claims

As previously explained in the 2018 Opinion, "to establish municipal liability under § 1983, a plaintiff must prove that 'action pursuant to official municipal policy' caused the alleged constitutional injury." *Cash v. Cty. of Erie*, 654 F.3d 324, 333 (2d Cir. 2011) (quoting *Connick v. Thompson*, 563 U.S. 51, 60 (2011)). This requires a plaintiff to prove the following five elements: (1) actions taken under color of law; (2) deprivation of a constitutional or statutory right; (3) causation; (4) damages; and (5) that an official policy of the municipality caused the constitutional injury." *Roe v. City of Waterbury*, 542 F.3d 31, 36 (2d Cir. 2008). Here, once again, the parties' main contentions revolve around whether Plaintiff has sufficiently pleaded an official custom or policy and causation. As will be explained below, the Court concludes that, although Plaintiff has alleged sufficient facts to support the plausibility of an existing policy or custom, she still fails to establish the requisite causation necessary to hold Mt. Kisco liable under Section 1983.

#### a. Custom or Policy

An "[o]fficial municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." *Connick*, 563 U.S at 61. A policy or custom may be established under the following theories:

> (1) a formal policy officially endorsed by the municipality; (2) actions taken by government officials responsible for establishing the municipal policies that caused the particular deprivation in question; (3) a practice so consistent and widespread that, although not expressly authorized, constitutes a custom or usage of which a supervising policy-maker must have been aware; or (4) a failure by policymakers to provide adequate training or supervision to subordinates to such an extent that it amounts to deliberate indifference to the rights of those who come into contact with the municipal employees.

*Brandon v. City of New York*, 705 F. Supp. 2d 261, 276-77 (S.D.N.Y. 2010) (citations omitted). This element "reflects the notion that 'a municipality may not be held liable under § 1983 solely because

it employs a tortfeasor.'" *Lowery v. Westchester Cty. Dep't of Corr.*, No. 15-CV-4577 (KMK), 2017 WL 564674, at *5 (S.D.N.Y. Feb. 10, 2017) (citing *Bd. of Cty. Comm'rs of Bryan Cty. v. Brown*, 520 U.S. 397, 403 (1997)).

Here, regardless of whether the SAC establishes a constitutional violation, Plaintiff has alleged sufficient facts to support the plausibility of an existing policy or custom. Like in the FAC, Plaintiff first states that Mt. Kisco had a longstanding policy of discriminating against Hispanic immigrants. (*See, e.g.*, SAC ¶¶ 61, 69, 74-77, 105.) Then, Plaintiff alleges that Mt. Kisco implemented that alleged policy when it failed to enforce housing regulations, to take steps to increase affordable housing, and to take steps to regulate landlords. (*See, e.g.*, *id.* ¶¶ 82-105.) Ultimately, as was the case when the Court addressed this issue in the 2018 Opinion, these allegations provide the necessary description to allege a policy or custom adopted by Mt. Kisco. *See Isaac v. City of New York*, 17 Civ. 1021 (PGG), 2018 WL 1322196, *6 (S.D.N.Y. March 13, 2018) ("[A] plaintiff must allege facts tending to support, at least circumstantially, an inference that such a municipal policy or custom exists") (quotations and citations omitted); *Torres v. Aramark Food*, No. 14-CV-7498 (KMK), 2015 WL 9077472, at *11 (S.D.N.Y. Dec. 16, 2015) (holding that an alleged practice of providing "inadequate nutrition," which then forced Muslim inmates exercising their religious beliefs to be taken off the kosher diet, was sufficient to allege, at least circumstantially, the inference that a policy or custom existed); *see also Ceparano v. Suffolk Cty. Dep't of Health*, 485 F. App'x. 505, 508–09 (2d Cir. 2012) (holding that Plaintiff's allegation that "the [Suffolk County Department of Health] has adopted a custom of denying adequate medical care to inmates for the purpose of saving money" was sufficient to plead a policy or custom).

b. **Causation**

Even if a municipal custom or policy has been sufficiently alleged, a plaintiff must still show a "direct causal link between the municipal action and the deprivation of federal rights." *Brown*, 520

U.S. at 404; *Outlaw v. City of Hartford*, 884 F.3d 351, 373 (2d Cir. 2018). This generally means that the municipal policy must be the "moving force," *i.e.*, the proximate cause, of a plaintiff's injuries. *Anonymous v. City of Meriden*, No. 3:10cv37 (MPS), 2013 WL 2254181, at *6 (D. Conn. May 22, 2013) ("Plaintiff "must still prove that the deficiency in [supervision] actually caused" the conduct that violated her constitutional rights. This standard is akin to proximate cause."); *see also Cash v. Cty. of Erie*, 654 F.3d 324, 342 (2d Cir. 2011) (explaining that "'proximate cause,' although derived from tort law, fairly describes a plaintiff's causation burden with respect to a municipal liability claim under § 1983.").

As it did in arguing for dismissal of the FAC, Mt. Kisco again maintains that Plaintiff fails to "plausibly allege[] [] sufficient factual allegations to demonstrate that, through its deliberate conduct, [Mt. Kisco's] policies were the 'moving force' behind the loss of life caused by a fire started by codefendant DaSilva on private property." (Mt. Kisco Mot. 9.) In opposition, Plaintiff counters that Mt. Kisco "permitted death traps to exist in Mount Kisco and emboldened scrupulous landlords to take advantage of people like Haniel," ultimately leading to Haniel's death. (Pl. Mem of Law in Opp. to Mot. to Dismiss ("Pl. Opp."), ECF No. 112, at 17-18.) Though Haniel's death was clearly avoidable, the Court ultimately cannot agree that *Mt. Kisco's alleged policy or custom* was the moving force of this tragedy.

Here, like the FAC, the SAC alleges that Mt. Kisco was aware that the Property's basement was inhabited by occupants but explained to the Property's owners that it could not "be used as a separate and independent living space from the rest of the authorized dwelling." (*Id.* ¶ 140.) The SAC further provides that Mt. Kisco failed to conduct inspections of the Property in the years leading up to the January 20, 2016 fire. (*Id.* ¶¶ 141-43, 152.) Mt. Kisco failed to do so even though it was purportedly aware of issues with the Property and notwithstanding its obligations to enforce appropriate housing regulations. (*Id.* ¶¶ 141-51.) It is certainly problematic that, despite regulations

mandating inspections of multiple-dwelling buildings at least every three years (*see id.* ¶ 143), Mt. Kisco allegedly failed to inspect the Property for a period of nearly six years (*id.* ¶¶ 141-42). However, beyond a few conclusory allegations (*see id.* ¶¶ 217-18), the SAC still does not allege anything more than an attenuated causal link between Mt. Kisco's nonfeasance, or purported willful/discriminatory ignorance, and the tragedy that befell Haniel.

To overcome this issue, Plaintiff claims that by failing to enforce applicable housing codes, Mt. Kisco *de facto* approved the illegal dwelling arrangements that were otherwise alleged to have been created by Francesca Luppino and Mr. Luppino. (*Id.* ¶ 217.) Yet, even accepting that premise as true, Plaintiff has gone one bridge too far in her attempt to create a direct causal link between Mt. Kisco and Haniel's death. There are simply no allegations that establish Mt. Kisco had actual or constructive notice that its failure inspect the Property would be certain to cause Haniel to be trapped in his basement apartment, and, in turn, succumb to the fire started by Defendant DaSilva. *See Melvin v. Cty. of Westchester*, No. 14-CV-2995 (KMK), 2016 WL 1254394, at *13 (S.D.N.Y. Mar. 26, 2016) (explaining that plaintiff failed to present "allegations that Westchester, NYCCS, and CCS had 'actual or constructive notice that the [staffing policy] is substantially certain to result in the violation of [inmates'] constitutional rights.'" (quoting *Alvarado v. Westchester Cty.*, 22 F. Supp. 3d 208, 218 (S.D.N.Y. 2014))); *Mabry v. Fischer*, No. 11 Civ. 2887(LBS), 2011 WL 6034368, at *5 (S.D.N.Y. Dec. 5, 2011) (explaining that town's failure to enforce environmental laws was not "the moving force behind [plaintiffs'] alleged injur[ies]" purportedly caused by emissions emanating from two facilities near prison at which plaintiffs were housed).

The Court is sympathetic to the pain and suffering that Plaintiff has undoubtedly endured as a result the tragic death of Haniel. However, the Court must nevertheless assess the legal sufficiency of Plaintiff's claims based on the facts contained in the SAC. On those facts, the Court cannot conclude that it is plausible that Mt. Kisco's alleged non-enforcement of housing regulations was the

moving force behind Haniel's death. The Court must GRANT Mt. Kisco's motion to dismiss Plaintiff's Section 1983 claims.

### B. Sufficiency of Equal Protection Claims

Even assuming the SAC had sufficiently established the requisite level of causation needed to state a claim against Mt. Kisco, the latest complaint still fails to plausibly allege an equal protection claim. As explained below, this is true either on the basis of a theory of selective enforcement or intentional discrimination.

#### a. Selective Enforcement of Housing Regulations

In the SAC, Plaintiff again alleges that Mt. Kisco selectively failed to enforce housing regulations at dwellings it purportedly knew to be occupied by immigrants. (SAC ¶ 153.) In response, Mt. Kisco argues that the SAC only uses "ambiguous descriptions" of "unidentified comparators [that] are similarly situated to [Haniel]," and therefore Plaintiff has "fail[ed] to identify any similarly situated comparator." (Mt. Kisco Mot. 11-12.) Plaintiff, however, challenges Mt. Kisco's position, arguing that the SAC "alleges in detail that Plaintiff and her son were part of a similarly situated group of individuals, to wit: residents living in Mount Kisco." (Pl. Opp. 20.) Therefore, Plaintiff largely advances the same argument made before Mt. Kisco's previous motion to dismiss. (*See* ECF No. 60 at 10.) As it did in the 2018 Opinion, the Court must disagree. *See* 2018 Opinion, 2018 WL 2209487 at *7 ("Plaintiff notes that the Complaint does identify a similarly situated group of individuals, namely 'residents living in Mount Kisco.' Plaintiff's allegations are insufficient to state a claim upon which relief can be granted.").

To properly plead a selective enforcement claim in violation of the Equal Protection Clause of the Fourteenth Amendment, a plaintiff must proffer sufficient factual allegations establishing "(1) [that] the person, compared with others similarly situated, was selectively treated; and (2) that such selective treatment was based on impermissible considerations such as race, religion, intent to inhibit

or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person." *Tyk v. Surat*, 675 F. App'x 40, 42 (2d Cir. 2017) (quoting *Freedom Holdings, Inc. v. Spitzer*, 357 F.3d 205, 234 (2d Cir. 2004)). Generally, a Plaintiff "must satisfy both elements to establish a claim of selective enforcement." *LaTrieste Restaurant v. Vill. of Port Chester*, 188 F.3d 65, 70 (2d Cir. 1999).

The first prong of the selective enforcement analysis consists of two requirements. First, a plaintiff must identify a similarly situated comparator and, second, he or she must show different treatment as compared with others similarly situated. *See Tower Props. LLC v. Vill. of Highland Falls*, No. 14 Civ. 4502 (NSR), 2017 WL 519267, at *4 (S.D.N.Y. Feb. 7, 2017). Courts in the Second Circuit are split over the proper test for determining whether a comparator is similarly situated in the selective enforcement context. *See Missere v. Gross*, 826 F. Supp. 2d 542, 561 (S.D.N.Y. 2011). Nevertheless, a plaintiff must still "plead sufficient facts from which a reasonable person could infer that Plaintiff and the [comparator] were similarly situated." *Lederman v. Benepe*, No. 12 Civ. 6028(PGG), 2014 WL 1318356, at *13 (S.D.N.Y Mar. 28, 2014).

As this Court previously explained, Plaintiff did not need to proffer evidence of similarly situated comparators at this stage. Nevertheless, it is still incumbent upon Plaintiff to allege facts that would allow this Court to determine if it is plausible that a jury could determine that the alleged comparators are similarly situated and were treated differently. *See Mosdos Chofetz Chaim, Inc. v. Vill. of Wesley Hills*, 701 F. Supp. 2d 568, 604 (S.D.N.Y. 2010) (noting that a selective enforcement claim requires "more than a bare allegation that other [comparators] were treated differently"). Though Plaintiff has, in general, added more allegations to the SAC, the gravamen of the Plaintiff's selective enforcement claim remains that Mt. Kisco did not act similarly towards buildings occupied by nonimmigrant tenants. (*Compare* SAC ¶ 204 ("The Village/Town's failure to meaningfully enforce the Housing Regulations with respect to multiple dwelling buildings was a result of selective enforcement based upon the fact that such dwellings are primarily occupied by its Hispanic-

immigrant population.") *with* FAC ¶ 127 ("As a matter of policy and practice, the Village/Town did not and does not act similarly toward buildings occupied by non-immigrant tenants, residents and/or occupants.").) Therefore the issue that plagued the FAC's selective enforcement claim is unchanged: Plaintiff's generalized description of potential comparators as other nonimmigrant tenants of Mount Kisco is insufficiently detailed for this Court to determine if a jury could plausibly decide that the unidentified comparators are similarly situated to Haniel. Accordingly, Mt. Kisco's motion to dismiss Plaintiff's selective enforcement claims is GRANTED.

### b. Intentional Discrimination

This Court outlined in the 2018 Opinion that, to establish a claim for intentional discrimination, "[a] plaintiff could: (1) 'point to a law or policy that expressly classifies persons on [an improper basis];' (2) 'identify a facially neutral law or policy that has been applied in an intentionally discriminatory manner;' or, (3) 'allege that a facially neutral statute or policy has an adverse effect and that it was motivated by discriminatory animus.'" *Dava v. City of New York,* 1:15-cv-08575 (ALC), 2016 WL 4532203, at *7 (S.D.N.Y. Aug. 29, 2016) (quoting *Brown v. City of Oneonta, New York*, 221 F.3d 329, 337 (2d Cir. 2000)). In the SAC, Plaintiff now provides more clarity as to the nature of her intentional discrimination claim. Specifically, Plaintiff now contends that Mt. Kisco "(1) was enforcing [] Housing Regulations in an intentionally discriminatory manner; [and] (2) [was] enforcing [] Housing Regulations in a manner that had an adverse effect on its Hispanic-immigrant population, which was motivated by discriminatory animus." (SAC ¶ 153.) Thus, it is clear that Plaintiff's intentional discrimination claims are premised on the second and third bases.

> In general, to plead intentional discrimination, a plaintiff need not allege that
>
> the challenged action rested solely on racially discriminatory purposes, or even that a discriminatory purpose was the dominant or primary one. Rather, [a] plaintiff[] must prove that a discriminatory purpose has been a motivating factor in the challenged

13

> action. That is, [a] plaintiff[] must show that those who carried out the challenged action selected or reaffirmed a particular course of action at least in part because of, not merely in spite of, its adverse effects upon an identifiable group.

*Floyd v. City of New York*, 959 F. Supp. 2d 540, 571 (S.D.N.Y. 2013) (citations and quotations omitted). These considerations apply to whether a plaintiff brings an intentional discrimination claim under either the second or third theory. *See Floyd*, 959 F. Supp. 2d at 571. Moreover, because "discriminatory intent is rarely susceptible to direct proof," plaintiffs are permitted to rely on circumstantial evidence "as may be available.". *Hayden v. Paterson*, 594 F.3d 150, 163 (2d Cir. 2010) (quoting *Vill. of Arlington Heights v. Metro. Housing Dev. Corp.*, 429 U.S. 252, 266 (1977)).

Here, the crux of Plaintiff's intentional discrimination claim is that (1) Hispanic immigrants overwhelmingly occupy buildings that run afoul of the relevant housing regulations and (2) Mt. Kisco does not enforce the housing regulations in those situations.[3] (Pl. Opp. 22.) In support, Plaintiff points to certain paragraphs from the SAC to argue that an intentional discrimination claim has been sufficiently alleged. (*Id.* (citing SAC ¶¶ 153, 155-58.) A close review of the SAC leads to a different conclusion. Certainly, looking at the allegations cited by Plaintiff, it is clear that Plaintiff's ultimate contention is that Mt. Kisco applied a facially neutral law in an intentionally discriminatory manner because it was "well aware" that Hispanic immigrants resided in illegal basements, attics, and rooms. (SAC ¶¶ 153-58.) The SAC also appears to add new allegations, seemingly intending to bootstrap the fact that Mt. Kisco was forced to enter into Consent Decree, based on purported discriminatory animus, to an inference that Mt. Kisco continued to act discriminatorily towards immigrants. (*See, e.g.*, SAC ¶¶ 81, 90, 187-91.) The issue, however, is that Plaintiff ultimately does not add any new *factual* allegations to "specifically allege [] events [Plaintiff] claim[s] constitute *intentional discrimination*" or "circumstances giving rise to a plausible inference of racially discriminatory

---

[3] This is the largely the same argument advanced in opposition to dismissal of the FAC. (ECF No. 60 at 11-12.)

intent" as it applied to Mt. Kisco's failure to enforce housing regulations. *Gant v. Wallingford Bd. of Educ.*, 69 F.3d 669, 673 (2d Cir. 1995). Rather, what proved lethal to the FAC is again rears its ugly head: the SAC only advances conclusory statements and "naked assertions" to establish a violation of the Equal Protection Clause.

Plaintiff's attempt to plead intentional discrimination through adverse impacts on Hispanic immigrants does not alter this conclusion. As the Court noted in the 2018 Opinion, allegations of disparate impact can be used to infer discriminatory intent. 2018 Opinion, 2018 WL 2209487 at *8. To this end, statistical evidence of disparate impact may establish a *prima facie* case of discriminatory intent when "the statistics [] not only [are] statistically significant in the mathematical sense, but they [are] also [] of a level that makes other plausible non-discriminatory explanations very unlikely." *Burgis v. N.Y.C. Dep't of Sanitation*, 798 F.3d 63, 69 (2d Cir. 2015). After providing relevant statistics, a plaintiff must then allege sufficient facts that trace the alleged disparate impact to a purpose to discriminate on the basis of race. *See Hayden*, 594 F.3d at 164.

Seemingly responding to the Court's invitation to provide "factual allegations of disparate impact on the Hispanic immigrant population, coupled with [] further factual allegations of racial animus," *see* 2018 Opinion, 2018 WL 2209487 at *9, the SAC details a set of statistics reported in Mt. Kisco's "Annual Local Code Administration and Enforcement Report." (SAC ¶ 160.) These allegations indicate that, from 2007 through 2016, the number of Uniform Code violations acted upon by Mt. Kisco were relatively low. (*Id.* ¶¶ 160-84.). The SAC then points to a drastic increase in the number of reported Uniform Code violations that were acted upon by the town in the 2017 report. (*Id.*) Plaintiff takes the position this disparity between 2007-2016 and 2017 reveals enough facts to plausibly establish that a discriminatory scheme was afoot. (Pl. Opp. 23.) Plaintiff is essentially pushing for an inference that, because Mt. Kisco's enforcement of code violations appeared to increase dramatically after Haniel's death in 2016, the low rate of enforcement between 2007 and

15

2016 must necessarily be indicative of an intentional discriminatory purpose and/or selective enforcement scheme.

The Court cannot agree. Critically, Plaintiff's presentation of these statistics sheds no light on the general makeup of the inhabitants of the dwellings where Mt. Kisco was enforcing code violations. The statistics, as is, fail to circumstantially establish that Mt. Kisco's non-enforcement of housing regulations adversely impacted Hispanic immigrants, let alone that any adverse impact could be attributed to discriminatory scheme. Indeed, on the facts alleged, the Court would not be in a position to rule out "other plausible non-discriminatory explanations" for the low rates of enforcement and the subsequent increase in enforcement following Haniel's death. *See Burgis*, 798 F.3d at 69-70. Simply put, the SAC does not proffer sufficient factual allegations to plausibly establish a discriminatory disparate impact.

Overall, the Court notes that, if true, Plaintiff's allegations of Mt. Kisco's history of discriminatory animosity toward Hispanic immigrants are troubling and, in many ways, deeply saddening. The Court is also mindful that insidious motivations are often difficult to discern by the naked eye and can be readily buried within the most facially innocuous policies. Such nefarious conduct should be readily challenged and vindicated to the extent possible. Nevertheless, it is ultimately still Plaintiff's obligation to plead sufficient facts to allow this Court to discern on the face of the complaint "that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. As the above makes clear, however, the SAC fails to do so. The Court GRANTS Mt. Kisco's motion to dismiss Plaintiff's federal claims.

## II. Court's Supplemental Jurisdiction Over Remaining State Law Claims

When Plaintiff filed this action, the Court had supplemental jurisdiction over the state law tort causes of action set forth in the SAC. *See* 28 U.S.C. § 1367(a). However, as the sole federal claim in this lawsuit has been dismissed—*i.e.*, the claim over which it the Court had original jurisdiction—

16

there is now a question of whether this Court should retain jurisdiction over Plaintiff's remaining state law claims, including those asserted against non-moving defendants. *Id.* § 1367(c)(3).

In general, once a court dismiss a claim over which it had original jurisdiction, § 1367(c) provides for "an occasion to decline to exercise supplemental jurisdiction." *Catzin v. Thank You & Good Luck Corp.*, 899 F.3d 77, 83 (2d Cir. 2018). "Under this prong, in a great many cases, the evaluation will usually result in the dismissal of the state-law claims." *Id.* (citing *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988); *see also Lievre v. JRM Constr. Mgmt., LLC*, No. 17-CV-4439 (BCM), 2019 WL 4572777, at *22 (S.D.N.Y. Sept. 20, 2019) ("In the 'usual case' in which 'all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine . . . will point toward declining to exercise jurisdiction over the remaining state-law claims."). Still, "the fact that a federal law claim has been eliminated prior to trial does not automatically render dismissal of state law claims appropriate." *See Colón v. N.Y.S. Dep't of Corrs. and Cmty. Supervision*, No. 15 Civ. 7432 (NSR), 2019 WL 5294935, at *11 (S.D.N.Y. Oct. 17, 2019). Instead, a court should assess whether exercising jurisdiction will promote "economy, convenience, fairness, and comity." *Jones v. Ford Motor Credit Co.*, 358 F.3d 205, 214 (2d Cir. 2004) (citation omitted); *Kolari v. N.Y. Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006) ("Once a district court's discretion is triggered under § 1367(c)(3), it balances the traditional values of judicial economy, convenience, fairness, and comity." (quoting *Cohill*, 484 U.S. at 350)).

Although it has been several years since Plaintiff filed this action, this case has yet to proceed beyond the pleading stage. Moreover, discovery has yet to be taken in any form. Courts have regularly exercised their discretion to decline supplemental jurisdiction in similar situations. *See, e.g.*, *Colón*, 2019 WL 5294935 at *12 ("In light of the dismissal of all federal claims from this action, the substantial discovery that remains outstanding, and the fact that Plaintiff's 'medical malpractice claims against [Medical Defendants] involve quintessential state law issues best resolved in a state

17

forum,' the Court in its discretion, declines to exercise supplemental jurisdiction over Plaintiff's medical malpractice claims."); *Ruotolo v. Fannie Mae*, 933 F. Supp. 2d 512, 527 (S.D.N.Y. 2013) (declining to exercise supplemental jurisdiction where federal law claims were dismissed before trial upon defendants' motion to dismiss); *Dellutri v. Vill. of Elmsford*, 895 F. Supp. 2d 555, 575 (S.D.N.Y. 2012) ("[T]his case remains in its initial stages, and the Parties have not yet proceeded to discovery. As all of Plaintiff's federal claims have been dismissed, the Court declines to exercise supplemental jurisdiction over Plaintiff's state law claims."); *Williams v. Berkshire Fin. Grp., Inc.*, 491 F. Supp. 2d 320, 329 (E.D.N.Y. 2007) (declining to exercise supplemental jurisdiction where, *inter alia*, the "case ha[d] not progressed beyond the pleading stage[,] [n]o discovery has been taken[, and] [t]he parties ha[d] no investment in th[e] [c]ourt beyond the instant motions [to dismiss]."). The Court therefore concludes that, on balance, the considerations of judicial economy, fairness, and comity militates in favor of this Court declining to exercise its discretion to exercise supplemental jurisdiction.[4] Therefore, the Court DISMISSES the remainder of Plaintiff's state law claims, without prejudice, so that she may re-file in state court.[5]

---

[4] The Court notes that there is no risk of Plaintiff's remaining state law claims being barred by applicable statute of limitations under either federal law, *see* 28 U.S.C. § 1367(d) ("The period of limitations for any claim asserted under subsection (a) . . . shall be tolled while the claim is pending and for a period of 30 days after it is dismissed unless State law provides for a longer tolling period."), or state law, *see* N.Y. C.P.L.R. § 205(a) ("If an action is timely commenced and is terminated in any other manner than by a voluntary discontinuance, a failure to obtain personal jurisdiction over the defendant, a dismissal of the complaint for neglect to prosecute the action, or a final judgment upon the merits, the plaintiff . . . may commence a new action upon the same transaction or occurrence or series of occurrences within six months after the termination provided that the new action would have been timely commenced at the time of commencement of the prior action . . . .").

[5] The Court is mindful that neither Plaintiff, Mt. Kisco, Mr. Luppino, nor the other non-moving defendants have addressed the appropriateness of exercising supplemental jurisdiction in this case, and that the Second Circuit has cautioned that a supplemental jurisdiction inquiry requires that the Court afford the parties "notice and an opportunity to be heard." *Catzin*, 899 F.3d at 82. Nevertheless, the Second Circuit has also explained that "an opportunity to be heard on whether to exercise supplemental jurisdiction may be inherent in the course of pre-trial proceedings such as those resolving motions to dismiss or for summary judgment." *Id.* at 84. Courts in this district have routinely interpreted this to include situations where there has been briefing related to these types of motions. *See, e.g.*, *Lievre*, 2019 WL 4572777 (declining to exercise jurisdiction after it determined that "no party ha[d] addressed the appropriateness of the exercise of supplemental jurisdiction" in their briefing, such that "both sides [] had an opportunity to be heard."); *Woolf v. Bloomberg L.P.*, 2019 WL 1046656, at *20 (S.D.N.Y. Mar. 5, 2019) ("In their memoranda, no party has addressed the appropriateness of the exercise of supplemental jurisdiction over the remaining state law claims in the event that Woolf's federal claims do not survive summary judgment. Thus, both sides have had an opportunity to be heard, and neither has urged that economy,

## CONCLUSION

For the foregoing reasons, Defendant Town/Village of Mount Kisco's motion to dismiss Plaintiff's federal claims against it is GRANTED. Additionally, the Court exercises its discretion to decline to exercise supplemental jurisdiction and, in turn, DISMISSES the remainder of Plaintiff's state law claims without prejudice so that Plaintiff may re-file in state court.

The Court respectfully directs the Clerk of the Court to terminate the motions at ECF Nos. 100 & 104. The Clerk shall mail a copy of this Opinion and Order to *pro se* Defendant DaSilva and show proof of service on the docket. Finally, the Clerk is further directed to close this case.

Dated: February 14, 2020  
White Plains, New York

SO ORDERED:

_____  
NELSON S. ROMÁN  
United States District Judge

---

convenience, fairness or comity weigh in favor of exercising supplemental jurisdiction."); *Downey v. Adloox Inc.*, No. 16-CV-1689 (JMF), 2018 WL 5266875 at *9 n.9 (S.D.N.Y. Oct. 23, 2018) ("The parties did not brief the question of whether the Court should exercise supplemental jurisdiction over Plaintiffs' NYCHRL claims in the event that it dismissed their federal claims. Nevertheless, the law is clear that the Court may decide that question *sua sponte* in this setting."). The Court therefore concludes that it may properly decide this issue of supplemental jurisdiction in this Opinion and Order. In any event, the Court had previously acknowledged the possibility of declining to exercise supplemental jurisdiction over the remaining state-law claims in the 2018 Opinion. *See* 2018 WL 2209487 at *12 ("Failure to timely file a Second Amended Complaint will result in dismissal of all federal claims, all claims against Mr. Luppino, and remand to State Court.").